**United States District Court**
**District of Massachusetts**

```
                                )
UNITED STATES OF AMERICA,       )
                                )
        v.                      )
                                )    Criminal Action No.
PATRICK SHEALEY,                )    10-10342-NMG
                                )
        Defendant.              )
                                )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

In April, 2011, defendant Patrick Shealey ("defendant") pled guilty to a one-count indictment charging Distribution of Cocaine and Possession of Cocaine with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1). In October, 2011, defendant was sentenced by another Session of this Court to 60 months in prison followed by 60 months of supervised release.

The drugs that were seized from defendant were analyzed by the now-infamous laboratory chemist Annie Dookhan ("Dookhan"), who later pled guilty to multiple instances of tampering with evidence which included, in some cases, adding known controlled substances to samples thereby creating positive tests. Defendant now contends that, had he been aware of the misconduct by Dookhan that took place at the Massachusetts Department of Public Health's William A. Hinton State Laboratory ("Hinton Lab"), he would not have pled guilty. He moves to withdraw his

plea and vacate his conviction pursuant to 28 U.S.C. § 2255. The government opposes the motion and requests summary dismissal. For the reasons that follow, defendant's motion to vacate will be denied and the government's request for summary dismissal will be allowed.

## I.   Factual Background and Procedural History

This case stems from an ongoing investigation into crack cocaine trafficking by the A-1 Drug Control Unit ("DCU") of the Boston Police Department. The DCU officers had received information that a crack cocaine dealer named "Red", later identified as defendant, was operating in the downtown area of Boston and using a certain telephone number to conduct his trafficking operations.

In September, 2010, an undercover police officer ("UC") called that number and asked if defendant would be willing to sell him crack cocaine. Communicating through street language, defendant arranged the time and place for UC to meet him to conduct their deal. UC arrived at the designated park bench in Boston Common with a hidden transmitter to allow the officers on nearby surveillance to monitor the deal. UC then covertly gave defendant $100 in exchange for six individually-knotted plastic bags of what appeared to be crack cocaine.

Following the transaction, UC advised over the transmitter that the deal had been completed and that defendant should be

placed under arrest.  Two of the officers on surveillance
attempted to arrest and search defendant, who struggled to
escape.  From defendant, the officers seized $329 in cash and
the cell phone that defendant had used to communicate with UC,
as well as six additional individually-knotted plastic bags of
suspected crack cocaine.  One of those bags was field-tested
positive for crack cocaine.

The 12 bags purchased and seized by the officers were then
divided, placed in two larger heat-sealed bags and sent to the
Hinton Lab where Dookhan and fellow chemist Daniel Renczkowski
confirmed that they contained crack cocaine.  As the primary
chemist, Dookhan opened the two heat-sealed bags, removed the
individual bags to obtain their gross weight and then randomly
selected two of the 12 bags for a sample analysis.  That process
left nine bags untested (the 12 bags collected from defendant
minus the one field-tested bag and the two bags lab-tested by
Dookhan).

In April, 2011, defendant pled guilty to one count of
Distribution of Cocaine and Possession of Cocaine with Intent to
Distribute, in violation of 21 U.S.C. § 841(a)(1), and was later
sentenced by then-District Judge Joseph Tauro to 60 months of
incarceration followed by 60 months of supervised release.  Had
he not pled guilty, defendant, a career offender, would have
faced a sentence in the guideline range of 210-262 months.  He

raised no question concerning the chemical composition of the drugs nor did he object to the pre-sentence report outlining his offense conduct and characterizing him as a lifelong drug user.

In August, 2013, after Dookhan's misconduct was revealed, and less than 17 months before defendant's projected release from custody, defendant filed the instant motion to withdraw his guilty plea and vacate his conviction.  Defendant argues that his plea was not voluntary, knowing and intelligent under Brady v. United States, 397 U.S. 742 (1970) and Ferrera v. United States, 456 F.3d 278 (1st Cir. 2006), insofar as he would not have pled guilty had he known about Dookhan's involvement in the analysis of the suspected drugs in his case.

In October, 2013, following further revelations about Dookhan's criminal conduct, the government commissioned a retesting of the 12 bags of suspected crack cocaine collected from defendant on the day of his arrest.  Chemists at the State Police Crime Lab in Sudbury, Massachusetts confirmed that the substance contained in each bag was crack cocaine.

Since the filing of this motion, defendant has completed his term of incarceration and is currently on supervised release.

## II.   **Motion to Vacate and Withdraw Plea**

### A.   **Legal Standard**

Title 28 U.S.C. § 2255 enables a prisoner in custody to move the court that imposed his sentence to vacate, set aside or correct the sentence if it was: (1) imposed in violation of the Constitution or laws of the United States or by a court that lacked jurisdiction, (2) in excess of the maximum authorized by law or (3) otherwise subject to collateral attack. 28 U.S.C. § 2255(a); David v. United States, 134 F.3d 470, 474 (1st Cir. 1998).  The defendant bears the burden of establishing the right to relief in each of those circumstances. Id.

As a general rule, a voluntary and intelligent plea, made with the advice of competent counsel, may not be collaterally attacked. See Mabry v. Johnson, 467 U.S. 504, 508 (1984); see also Moreno-Morales v. United States, 334 F.3d 140, 145 (1st Cir. 2003) ("[e]videntiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted.").  However, if a prisoner's claim is predicated on evidence unavailable to him at the time of the plea, he can collaterally attack his sentence on the ground that his plea was involuntary (i.e., unknowing, unintelligent and offered with insufficient awareness). Ferrara, 456 F.3d at 289.  A defendant

must prove two elements in order to vacate a guilty plea as involuntary:

> First, he must show that some egregiously impermissible conduct (say, threats, blatant misrepresentations, or untoward blandishments by government agents) antedated the entry of his plea. Second, he must show that the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice.

Id. at 290 (internal citations omitted). The reviewing court must consider the "totality of the circumstances surrounding the plea." Id. Relevant factors include whether the undisclosed information (1) would have undermined the facts which formed the basis of the guilty plea, (2) could have discredited or impeached a witness whose credibility may have determined the outcome at trial, (3) merely adds to evidence already in defendant's possession, (4) would have affected defense counsel's decision to recommend pleading guilty or (5) was eclipsed by the benefits of pleading guilty. Id. at 294.

## B. Application

Defendant contends that his plea was involuntary. He maintains that had he known that he would have been able to impeach the credibility of the government's drug analyst and cast doubt upon the chemical composition of the drugs, he would not have pled guilty to the charge or, at the very least, might have negotiated a more favorable plea bargain.

### 1.   Materiality

The Court of Appeals for the First Circuit has yet to decide whether Dookhan's actions constituted "egregiously impermissible misconduct", focusing instead on the materiality prong of the Ferrara framework. See, e.g., Wilkins v. United States, 754 F.3d 24, 28 (1st Cir. 2014) (noting that the defendant's "obvious inability" to make the required showing as to materiality made it unnecessary to resolve the parties' arguments regarding the first prong).  Thus, the Court begins its analysis with the second inquiry under the Ferrara framework.

To satisfy the materiality prong, defendant must show a reasonable probability that, but for the misconduct, he would not have pled guilty. Hill v. Lockhart, 474 U.S. 52, 59 (1985). A reasonable probability is a probability "sufficient to undermine confidence in a belief" that defendant would have pled guilty. Ferrara, 456 F.3d at 294.  Defendant's "subjective, post hoc assertions" are not dispositive. United States v. Merritt, 755 F.3d 6, 10 (1st Cir. 2014).  Rather, a court must employ an objective analysis to determine what effect, if any, "Dookhan's misconduct was likely to have had on [defendant's] chances at trial." Id.; see also Wilkins, 754 F.3d at 28.

The First Circuit's decisions in Wilkins and Merritt provide instructive guidance with respect to this analysis.  The

defendants in those cases, Larry Wilkins and Ronald Merritt
(jointly "appellants"), received lengthy prison sentences after
they pled guilty to Possession with Intent to Distribute
Cocaine, in violation of 21 U.S.C. § 841(a)(1). Wilkins, 754
F.3d at 27; Merritt, 755 F.3d at 6, 12.  The charges were
brought after the same incident during which appellants sold
crack cocaine to an undercover Boston Police Officer and were
arrested.  As a result of a search of appellants incident to
their arrests, officers seized additional bags of what appeared
to be crack cocaine.  All of the bags were then forwarded to the
Hinton Lab, where Dookhan certified that the bags contained
crack cocaine.  One of the bags had been field-tested positive
for crack cocaine.

Shortly thereafter, appellants moved to withdraw their
pleas based on revelations of Dookhan's conduct, prompting the
government to commission a retest of 13 untested bags seized
during their arrests.  While all 13 bags tested positive for
crack cocaine, appellants continued to maintain that, had they
known about Dookhan's unlawful activity, they would not have
pled guilty.

The First Circuit denied appellants' motions to withdraw
based on their failure to demonstrate materiality. Wilkins, 754
F.3d at 28; Merritt, 755 F.3d at 10.  In each instance, the
First Circuit concluded that the government's evidence would

have been sufficient to prove appellants' guilt, with or without Dookhan's drug certifications. Wilkins, 754 F.3d at 29; Merritt, 755 F.3d at 10-11.  The "prototypical street corner drug buy", positive field test and stockpile of suspicious bags seized from appellants constituted "overwhelming" circumstantial evidence of appellants' guilt. Wilkins, 754 F.3d at 29; see also Merritt, 755 F.3d at 10.  Furthermore, appellants admitted that the contraband seized incident to their arrests was, in fact, crack cocaine and neither attempted to discredit the admission or make a claim of factual innocence. Merritt, 755 F.3d at 11; Wilkins, 754 F.3d at 30 (noting that an admission "is entitled to significant (albeit not dispositive) weight when...[the defendant] seeks to vacate [his] plea through a collateral attack.").  The First Circuit ultimately concluded that, given the results of the second drug test, any attempt to argue that the substance was not what it was purported to be would fail and the Dookhan scandal by itself did not provide appellants a defense.

The facts in this case are nearly identical to the scenario in Wilkins and Merritt.  Here, a second drug test followed the Dookhan revelations and confirmed that the individual bags contained crack cocaine.  Defendant seeks to discredit the results of the second drug test, however, by raising a novel chain of custody argument.  He contends that Dookhan had access

to the untested bags in an unsealed condition and admitted to comingling samples from different cases on her workbench. Accordingly, defendant maintains, with the support of an expert affidavit, that the government cannot establish that the material tested in the second drug test is the same material originally seized from defendant on the day of his arrest. Instead, he argues that Dookhan necessarily opened the outer heat-sealed bags to weigh the individual bags inside and therefore, the individual bags could not have remained "untouched" as the district court in Wilkins improperly concluded. See United States v. Wilkins, 943 F. Supp. 2d 248, 258 n.10 (D. Mass. 2013). Defendant asserts that had he known of that alleged break in the chain of custody, he would have been able to exclude or at least impeach the government's laboratory evidence at trial.

The Court nevertheless agrees with the government's assertion that there is no evidence that Dookhan opened the untested individual bags and corrupted the chain of custody. The fact that Dookhan had access to the individual bags does not establish that she opened them, particularly where, as in this case, the suspected drugs were found and photographed in their original packaging. Furthermore, there is no evidence that Dookhan intended to test more than two of the 12 baggies or that she had any other reason to open the remaining untested bags,

especially given her practice of analyzing samples from as many cases as possible in a short period of time. See Wilkins, 754 F.3d at 29 n.2 (finding "no reason to suspect that [Dookhan] took the time and trouble to open, contaminate, and close each [untested bag]"); see also United States v. Williams, 985 F.2d 749, 757 (5th Cir. 1993) (denying post-conviction relief where the record provided "no reason to believe" the defendant had tampered with the suspected drugs prior to retesting).

Moreover, even without laboratory analysis, the "overwhelming" circumstantial evidence against defendant gave him a "strong incentive[]" to plead guilty. See Wilkins, 943 F. Supp. 2d at 258.  Such evidence included: (1) admissions made by defendant to UC regarding his willingness to sell him crack cocaine, (2) the covert manner and method by which defendant conducted the transaction with UC, (3) defendant's effort to escape the officers who tried to arrest him after the sale, (4) the additional bags of suspected crack cocaine recovered from defendant at the arrest and (5) the fact that one of the bags collected from defendant field-tested positive for crack cocaine.  The government contends, and defendant acknowledges, that courts often refuse to reverse convictions where drug composition was proven by circumstantial evidence. See e.g., United States v. Valencia-Lucena, 925 F.2d 506, 512 (1st Cir. 1991) (finding it unnecessary to perform chemical analysis where

circumstantial evidence of drug identity was sufficient); United States v. Walters, 904 F.2d 765, 770 (1st Cir. 1990) (explaining that "[i]dentification of a controlled substance does not require direct evidence if available circumstantial evidence establishes its identity beyond a reasonable doubt") (internal citations omitted).

Furthermore, similar to the appellants in Wilkins and Merritt, here defendant admitted under oath at his Rule 11 plea hearing that the material purchased and seized by the officers was crack cocaine. See Wilkins, 754 F.3d at 30; Merritt, 755 F.3d at 11.  Defendant never made a claim of factual innocence, offered an explanation for his guilty plea or objected to the pre-sentence report outlining his offense conduct and characterizing him as a lifelong drug user. See United States v. Parilla-Tirado, 22 F.3d 368, 373 (1st Cir. 1994) (noting that the absence of a claim of innocence "cuts sharply against allowing [a defendant's] motion to withdraw his guilty plea").

Finally, as in Wilkins and Merritt, defendant's guilty plea resulted in a significantly lower sentence than he would have otherwise faced had he been found guilty at trial.  Following a trial conviction, defendant would have been subject to a career offender guideline range of 210-262 months, or between 12 and 16 years higher than the sentence that he was able to achieve through a prompt plea. See Wilkins, F. Supp. 2d at 528 (the

"appreciable benefit" that defendant received in exchange for his prompt plea provided a "strong incentive[]" to plead guilty); Merritt, 755 F.3d at 10 (affirming that the "gambit [of proceeding to trial] would not have been worth a roll of the dice").  While defendant challenges the government's laboratory analysis, he cannot dispute that Dookhan "bears no relationship to this mass of circumstantial evidence." See Wilkins, 754 F.3d at 29.

Based on the totality of the circumstances, the Court concludes that defendant has failed to establish a "reasonable probability" that Dookhan's misconduct influenced his decision to avoid trial.  With or without laboratory analysis, the weight of the additional evidence, along with the benefit of a substantially reduced sentence, provided defendant with more than enough motivation to plead guilty.  Accordingly, defendant fails to satisfy the materiality prong of the Ferrera analysis and therefore is not entitled to relief.

**ORDER**

For the foregoing reasons, defendant Patrick Shealey's motion to withdraw his guilty plea and vacate his conviction (Docket No. 34) is **DENIED** and the government's request for summary dismissal (Docket No. 53) is **ALLOWED**.

**So ordered.**

_/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated July 8, 2015